# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 21014**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jeremy M. ZIER**
Senior Master Sergeant (E-8), U.S. Air Force, *Applicant*

————————————

*Application for Grant of Review Pursuant to Article 69(d)(1)(B), UCMJ*

Decided 18 April 2023

————————————

*Military Judge:* Sterling C. Pendleton.

*Sentence:* Sentence adjudged on 14 August 2020 by SpCM convened at Joint Base San Antonio-Randolph, Texas. Sentence entered by military judge on 2 September 2020: reduction to E-7.

*For Appellant:* Robert A. Feldmeier, Esquire.

*For Appellee:* Major Alex B. Coberly, USAF; Major Jay S. Peer, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

This case is before the court on application for grant of review of the action taken by The Judge Advocate General (TJAG) pursuant to Article 69(d)(1)(B),

Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869(d)(1)(B).[1] TJAG denied Applicant's three petitions seeking relief from the findings and sentence of his special court-martial. While the application was pending, we specified three issues[2] for counsel for both parties to answer based on the apparent scrivener's errors in Article 69(c)(1)(A) and (c)(2), UCMJ, 10 U.S.C. §§ 869(c)(1)(A), (c)(2). We asked whether TJAG had the authority to review Applicant's case and, in turn, whether this court has the authority to review the action taken by TJAG. To the extent these questions relate to jurisdiction, and not scope of authority of TJAG and this court to review his case, we answer both questions in the affirmative. Having settled the issue of jurisdiction in Applicant's favor, we grant review.

## I. BACKGROUND

A special court-martial composed of officer members convicted Applicant of dereliction of duty for failing to maintain professional relationships with subordinate Airmen, and committing abusive sexual contact by touching directly the genitalia and inner thigh of another person, in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920, *Manual for Courts-Martial, United States*

---

[1] Unless otherwise noted, references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] The specified issues read as follows:

> I. WHETHER THE REFERENCES TO ARTICLE 65(B), UCMJ, WHERE IT APPEARS IN ARTICLE 69, UCMJ, AS AMENDED BY SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, NEGATE (A) THE AUTHORITY OF THE JUDGE ADVOCATE GENERAL TO REVIEW APPLICATIONS FOR RELIEF UNDER ARTICLE 69(C), UCMJ; OR (B) THE AUTHORITY OF THIS COURT UNDER ARTICLE 69(D), UCMJ, TO REVIEW THE ACTION OF THE JUDGE ADVOCATE GENERAL.

> II. WHETHER THE APPLICATION FOR RELIEF TO THE JUDGE ADVOCATE GENERAL WAS PROPERLY THE SUBJECT OF REVIEW BY THE JUDGE ADVOCATE GENERAL UNDER ARTICLE 69, UCMJ, AS AMENDED BY SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, OR BY ANY OTHER LAW.

> III. IF THE APPLICATION FOR GRANT OF REVIEW IS NOT PROPERLY BEFORE THIS COURT, WHAT RELIEF, IF ANY, DOES THIS COURT HAVE AUTHORITY TO ORDER?

(2012 ed.).[3] The sentence adjudged by members on 14 August 2020 and entered by the military judge on 2 September 2020 consisted of reduction to the grade of E-7. The convening authority denied Appellant's request for deferment of the reduction in grade.

On 21 January 2021, an attorney designated by TJAG reviewed Applicant's case under Article 65, UCMJ, 10 U.S.C. § 865. As a result of that review, the same notation was affixed to both the entry of judgment and Volume I of the record of trial, and states as follows:

> Article 65(d)[, UCMJ, 10 U.S.C. § 865(d)], Review pursuant to the authority of R.C.M. [Rule for Courts-Martial] 1202(d)[4]:
>
> I conclude: (1) the court had jurisdiction over the accused and the offense; (2) each charge and specification stated an offense; (3) the sentence was within the limits prescribed as a matter of law; and (4) [w]hen applicable, a response to each allegation of error was made in writing by the accused.[5]

Because it was not evident from the record that Applicant was notified of the results of the 21 January 2021 review of his case, on 5 October 2022, we ordered the Government to show good cause why we should not return the record because it appeared incomplete after entry of judgment. On 17 October 2022, the Government responded to that order, conceding, *inter alia*, that there was reason to believe that the designated reviewing attorney did not serve Applicant "by first-class certified mail" with the results of the Article 65, UCMJ, review as required by R.C.M. 1201(g) (stating "[p]roof of service shall be attached to the record of trial").

Despite not having been notified in accordance with that rule, Applicant, with assistance of civilian defense counsel, nonetheless petitioned TJAG for

---

[3] Applicant was found not guilty of two specifications of abusive sexual contact under Article 120, UCMJ, 10 U.S.C. § 920.

[4] The citation to R.C.M. 1202(d) in the notation is incorrect. That rule pertains to detailing appellate counsel. We assume the judge advocate who conducted the review meant R.C.M. 1201(d), *Form and content for review of cases not eligible for appellate review at the Court of Criminal Appeals.*

[5] As to this fourth conclusion by the reviewing attorney, it does not provide the court any additional information as to whether the accused did in fact raise any allegations of error, and the record is silent on this.

relief pursuant to Article 69, UCMJ, 10 U.S.C. § 869, and R.C.M. 1201.[6] In the brief in support of his application filed with the court, Applicant provides a concise statement of that petition and what happened next:

> On 23 September 2021, Applicant filed an initial petition for relief with [TJAG] pursuant to R.C.M. 1201. On 6 December 2021, [Applicant] filed a supplemental petition with TJAG pursuant to R.C.M. 1201. On 19 April 2022, Applicant filed a second supplemental petition with TJAG, also pursuant to R.C.M. 1201. On 11 August 2022, TJAG issued an action which denied all relief to Applicant and found that his second supplemental petition was untimely.

On 29 September 2022, Applicant, again with assistance of civilian defense counsel, submitted his case to this court in an application for review.[7] That application includes an accompanying brief that identifies five assignments of error, which we summarize here: (1) the evidence is legally insufficient to support a conviction for dereliction of duty because the Government presented no evidence as to the existence of any duty; (2) the military judge erred when he permitted the Government to prove he committed the abusive sexual contact offense with inadmissible propensity evidence; (3) the Under Secretary of the Air Force and then the Secretary of the Air Force engaged in apparent and actual unlawful command influence preventing Applicant from "receiv[ing] an impartial consideration of the merits of his other claims" during appellate review; (4) Applicant was subject to unlawful post-trial punishment in excess of the sentence; and (5) TJAG improperly found Applicant's second supplemental petition[8] to be untimely, despite the fact that he filed that petition before the R.C.M. 1201(g) review was mailed to him and despite the fact that the petition deals in part with allegations post-dating the original petition.

---

[6] To qualify for review on application for relief to TJAG, an accused must submit such application not later than one year after the later of the date when the accused is notified of the decision under R.C.M. 1201(g), or the date in which the decision is deposited in the mail to the accused. *See* R.C.M. 1201(h)(2)(B).

[7] The application was submitted before 23 December 2022, the effective date of the National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, 136 Stat. 2395 (2022). Section 544(b) of that Act amended Article 66, UCMJ, and gave a Court of Criminal Appeals jurisdiction over a timely appeal of, *inter alia*, a conviction by special court-martial. Section 544(d) of the Act specifies that our expanded jurisdiction will not apply to "any matter that was submitted before the date of the enactment of this Act to a Court of Criminal Appeals . . . ."

[8] The petition at issue in this assignment of error sought relief from TJAG on grounds that "the Secretary of the Air Force is engaged in apparent and actual unlawful command influence while [Applicant's] conviction is pending Article 69, UCMJ[,] review."

## II. DISCUSSION

### A. Legislative History

For every court-martial that ends in a judgment of guilty, a convicted servicemember is entitled to a review of the findings of guilty and the sentence. Depending on the sentence, it is generally understood that appellate review may include evaluation of the record by TJAG. *See United States v. Brown*, 81 M.J. 1, 4 (C.A.A.F. 2021) (stating "[the accused] may yet seek review by TJAG pursuant to Article 69(b), UCMJ[, 10 U.S.C. § 869(b)]").

#### 1. The Military Justice Act of 2016

In the Military Justice Act of 2016 (MJA), Congress included a provision that a Court of Criminal Appeals (CCA) "may review the action taken by [TJAG]" in a case submitted to the court "by the accused in an application for review." *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, § 5333, 130 Stat. 2000, 2936 (2016) (amending Article 69, UCMJ, 10 U.S.C. § 869). However, in doing so, and as discussed in this opinion, Congress appeared to legislate that a CCA's expanded authority in two articles of the UCMJ—Articles 66(b)(1)(D) and 69(d)(1)(B), UCMJ[9]— would apply to cases that TJAG was not eligible to review as set forth in another article, Article 65(b), UCMJ.[10] Congress seemed to give with one hand what it took away with the other. To resolve this seeming contradiction, we begin with a discussion of the background of two amendments to the UCMJ when Congress enacted the MJA.

#### 2. Articles 65 and 69, UCMJ

In the MJA, Congress amended Articles 65 and 69, UCMJ. *See* FY17 NDAA §§ 5329, 5333. As amended, Article 65, UCMJ, describes types of cases eligible for review by an attorney within the office of TJAG or designee, and the scope of review; Article 69, UCMJ, describes in subsection (c)(1) the kinds of relief TJAG may order when reviewing certain cases, and in subsection (c)(2), the scope of review when an appeal is waived or withdrawn.

As relevant here, the legislative history reflects minor substantive differences in these amended articles as passed by the House of Representatives (House) and Senate. However, an apparent difference lies in the way each chamber enumerated and identified subsections of those articles in bills that worked their way through the legislative process.

---

[9] 10 U.S.C. §§ 866(b)(1)(D), 869(d)(1)(B).

[10] 10 U.S.C. § 865(b) (identifying cases eligible for automatic review and direct appeal review).

The amended articles were complementary within the bills in each chamber, but each chamber's draft legislation enumerate subsections differently. Stated succinctly, the House made provisions for TJAG review in Article 65(b), and the Senate put those provisions in Article 65(d).[11] In November 2016, a conference report to accompany Senate Bill 2943 was submitted to each chamber for approval. H.R. REP. NO. 114-840 (2016). The report summarized the relevant provision of the Senate bill, noting:

> The Senate bill contained a provision (sec. 5293) that would amend section 869 of title 10, United States Code, (Article 69, Uniform Code of Military Justice (UCMJ)) to authorize an accused, after a decision is issued by the Office of the Judge Advocate General under Article 69, UCMJ, to apply for discretionary review by the Court of Criminal Appeals under Article 66, UCMJ[, 10 U.S.C. § 866]. The Judge Advocates General would retain authority to certify cases for review by the appellate courts.

H.R. REP. NO. 114-840, at 1528. The report also stated, "The House amendment contained a similar provision (sec. 6813)." *Id.*

The conference report that accompanied Senate Bill 2943 passed the House. 162 CONG. REC. H7134 (daily ed. 2 Dec. 2016). The Senate agreed. 162 CONG. REC. S6873 (daily ed. 8 Dec. 2016). The President signed Senate Bill 2943 on 23 December 2016 and Articles 65 and 69, UCMJ, as amended, became law as implemented by the President effective on 1 January 2019 in Executive Order 13,825, § 3(a), 83 Fed. Reg. 9889 (8 Mar. 2018).[12]

---

[11] The FY17 NDAA was introduced in Congress as H.R. 4909. 162 CONG. REC. H1634 (daily ed. 12 Apr. 2016). The House passed the bill in May 2016. 162 CONG. REC. H2813 (daily ed. 18 May 2016). The bill made provisions for "Review by Judge Advocate General" (TJAG review) in subsection (b) of Article 65. H.R. 4909, 114th Cong. § 6809 (as engrossed in House, 18 May 2016). The bill also made conforming amendments to Article 69(c), UCMJ, to refer to a case reviewed by TJAG under section "865(b)" of title 10, United States Code (Article "65(b)"). *See id.* § 6813. The Senate passed similar legislation in Senate Bill 2943, but it differed from H.R. 4909 by placing provisions for TJAG review in subsection (d) of Article 65, *and not subsection (b)* as the House had done. See 162 CONG. REC. S4245 (daily ed. 15 Jun. 2016). The Senate's version of the legislation made conforming amendments to Article 69(c) to refer to TJAG review under section "865(d)" of title 10, United States Code (Article "65(d)"). *See id.* S4247.

[12] The specifications of which Applicant was convicted alleged offenses before 1 January 2019. Nonetheless, Articles 65 and 69, UCMJ, as amended by the MJA apply to his case. *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(1), 130 Stat. 2000, 2967 (2016), as amended by National Defense Authorization Act for Fiscal Year 2018 (FY18 NDAA),

As amended, counsel for both parties agree that there appear to be scrivener's errors in Article 69(c)(1)(A) and (c)(2), UCMJ, 10 U.S.C. §§ 669(c)(1)(A); (c)(2): the language in both subsections refers to a case reviewed under Article 65(b), UCMJ; however Congress could have meant Article 65(d), UCMJ, instead.

### a. Article 65, UCMJ

As amended by the MJA, Article 65, UCMJ, subsections (b) and (d) read as follows:

> § 865. Art. 65. Transmittal and review of records
>
> . . . .
>
> (b) CASES FOR DIRECT APPEAL.—
>
> (1) AUTOMATIC REVIEW.—If the judgment includes a sentence of death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable discharge or bad-conduct discharge, or confinement for 2 years or more, the Judge Advocate General shall forward the record of trial to the Court of Criminal Appeals for review under section 866(b)(2) of this title (article 66(b)(2)).[13]
>
> (2) CASES ELIGIBLE FOR DIRECT APPEAL REVIEW.—
>
> (A) IN GENERAL.—If the case is eligible for direct review under section 866(b)(1) of this title (article 66(b)(1)), the Judge Advocate General shall—(i) forward a copy of the record of trial to an appellate defense counsel who shall be detailed to review the case and, upon request of the accused, to represent the accused before the Court of Criminal Appeals; and (ii) upon written request of the accused, forward a copy of the record of trial to civilian counsel provided by the accused.
>
> (B) INAPPLICABILITY.—Subparagraph (A) shall not apply if the accused—(i) waives the right to appeal under section 861 of this

---

Pub. L. No. 115-91, § 531(n)(1), 131 Stat. 1283, 1387 (2017). The Acts clarify that the President shall prescribe whether, and to what extent, MJA amendments apply to a case in which a specification alleges the commission, before 1 January 2019, of an offense in violation of the UCMJ.

[13] This sentence was further amended in subsequent legislation by striking "section 866(b)(2) of this title (article 66(b)(2))" and inserting "section 866(b)(3) of this title (article 66(b)(3))." *See* FY18 NDAA, Pub. L. No. 115-91, § 1081(c)(1)(J), 131 Stat. 1283, 1598 (2017).

title (article 61); or (ii) declines in writing the detailing of appellate defense counsel under subparagraph (A)(i).

. . . .

(d) REVIEW BY JUDGE ADVOCATE GENERAL.—

(1) BY WHOM.—A review conducted under this subsection may be conducted by an attorney within the Office of the Judge Advocate General or another attorney designated under regulations prescribed by the Secretary concerned.

(2) REVIEW OF CASES NOT ELIGIBLE FOR DIRECT APPEAL.—(A) IN GENERAL.—A review under subparagraph (B) shall be completed in each general and special court-martial that is not eligible for direct appeal under paragraph (1) or (3) of section 866(b) of this title (article 66(b)).

(B) SCOPE OF REVIEW.—A review referred to in subparagraph (A) shall include a written decision providing each of the following: (i) A conclusion as to whether the court had jurisdiction over the accused and the offense. (ii) A conclusion as to whether the charge and specification stated an offense. (iii) A conclusion as to whether the sentence was within the limits prescribed as a matter of law. (iv) A response to each allegation of error made in writing by the accused.

(3) REVIEW WHEN DIRECT APPEAL IS WAIVED, WITHDRAWN, OR NOT FILED.—

(A) IN GENERAL.—A review under subparagraph (B) shall be completed in each general and special court-martial if—(i) the accused waives the right to appeal or withdraws appeal under section 861 of this title (article 61); or (ii) the accused does not file a timely appeal in a case eligible for direct appeal under subparagraph (A), (B), or (C) of section 866(b)(1) of this title (article 66(b)(1)).

(B) SCOPE OF REVIEW.—A review referred to in subparagraph (A) shall include a written decision limited to providing conclusions on the matters specified in clauses (i), (ii), and (iii) of paragraph (2)(B).

. . . .

FY17 NDAA, Pub. L. No. 114-328, § 5329, 130 Stat. 2000, 2930–31 (2016) (internal quotation marks omitted).

### b. Article 69, UCMJ

As amended by the MJA, Article 69(c)(1)(A) and (c)(2), UCMJ, appears to contain scrivener's errors by reference to a case reviewed under Article 65(b), UCMJ, rather than Article 65(d), UCMJ. Subsection (c) of the statute reads in its entirety as follows:

§ 869. Art. 69. Review by Judge Advocate General

. . . .

(c) SCOPE.—

(1)(A) In a case reviewed under section 864 or *865(b)* of this title (article 64 or *65(b)*), the Judge Advocate General may set aside the findings or sentence, in whole or in part[14] on the grounds of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence.

(B) In setting aside findings or sentence, the Judge Advocate General may order a rehearing, except that a rehearing may not be ordered in violation of section 844 of this title (article 44).

(C) If the Judge Advocate General sets aside findings and sentence and does not order a rehearing, the Judge Advocate General shall dismiss the charges.

(D) If the Judge Advocate General sets aside findings and orders a rehearing and the convening authority determines that a rehearing would be impractical, the convening authority shall dismiss the charges.[15]

(2) In a case reviewed under section *865(b)* of this title (article *65(b)*), review under this section is limited to the issue of whether the waiver or withdrawal of an appeal was invalid under the law. If the Judge Advocate General determines that the

---

[14] This sentence was further amended in subsequent legislation by inserting a comma after "in part." *See* FY18 NDAA, Pub. L. No. 115-91, § 1081(c)(1)(L), 131 Stat. 1283, 1598 (2017).

[15] This paragraph was further amended in subsequent legislation enacted on 27 December 2021, and will apply to offenses that occur two years after that date. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §§ 539A, 539C, 135 Stat. 1541, 1698, 1699 (2021).

> waiver or withdrawal of an appeal was invalid, the Judge Advocate General shall order appropriate corrective action under rules prescribed by the President.
>
> . . . .

FY17 NDAA, Pub. L. No. 114-328, § 5333, 130 Stat. 2000, 2935–36 (2016) (emphasis added) (internal quotation marks omitted).

### 3. The *Manual for Courts-Martial*

The Joint Service Committee on Military Justice (JSC) states in the Preface to the *Manual* that it "contains amendments to the Uniform Code of Military Justice (UCMJ) made by [the] Military Justice Act of 2016."[16] *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), Preface. However, Article 69(c), UCMJ, 10 U.S.C. § 869(c), is stated differently in the *Manual* than the language quoted above from Section 5333 of FY17 NDAA. As stated in the *Manual*, the provisions of Article 69, UCMJ, in subsection (c)(1)(A)—for the kinds of relief that may be ordered following TJAG review, and in subsection (c)(2)—for the scope of that review when a direct appeal to a Court of Criminal Appeals is waived or withdrawn, most closely tracks Senate Bill 2943, *supra*, but not the law.

In that regard, the *Manual* recites, incorrectly, Article 69(c)(1)(A) and (c)(2), as follows:

> (c) SCOPE.—
>
> (1)(A) In a case reviewed under section 864 or *865(d)* of this title (article 64 or *65(d)*), the Judge Advocate General may set aside the findings or sentence, in whole or in part, on the grounds of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence.
>
> . . . .
>
> (2) In a case reviewed under section *865(d)* of this title (article *65(d)*), review under this section is limited to the issue of whether the waiver, withdrawal, *or failure to file an appeal* was invalid under the law. If the Judge Advocate General determines that the waiver, withdrawal, *or failure to file an appeal* was in-

---

[16] The Preface further states that the *Manual* contains amendments made by the National Defense Authorization Acts for Fiscal Year 2018 and Fiscal Year 2019.

valid, the Judge Advocate General shall order appropriate corrective action under rules prescribed by the President.

*MCM*, App. 2, at A2-29 (emphasis added).

In summary, Article 69(c), UCMJ, as amended by the MJA, differs in three ways from the language of the article contained in the *Manual*:

- Article 69(c)(1)(A), UCMJ, references actions TJAG may direct on appeal by reference to a case reviewed under Article 65(b), UCMJ, 10 U.S.C. § 865(b); however, the *Manual* references such actions with respect to a case reviewed under a different subsection, that is, one reviewed under Article "65(d)."

- Article 69(c)(2), UCMJ, references the limited scope of review of a case under Article 65(b), UCMJ; however, the *Manual*, again, references such limited review with respect to a case reviewed under Article "65(d)."[17]

- Additionally, the *Manual* includes within the scope of TJAG's authority to order appropriate corrective action whether an accused's "failure to file an appeal" was invalid. This language is not included in Article 69(c)(2), UCMJ, as amended by the MJA.

## B. Responses to Specified Issues

On 22 December 2022, by order of the court, we specified three issues, *supra* n.2, for briefing. In response to our order, Applicant argues that "[t]he apparently erroneous references in Article 69(c)(1)(A)[, UCMJ,] to Article 65(b)[, UCMJ,] . . . does not affect the ability of the Judge Advocate General of the Air Force [TJAG] to review the application at issue here because that authority derives from Article 69(a), UCMJ[, 10 U.S.C. § 869(a)]." As to the matter of this court's authority to review TJAG's decision, Applicant cites the opinion of the United States Court of Appeals for the Armed Forces (CAAF) in *Brown*, in which the CAAF favorably acknowledged the authority of this court to review such decisions, stating:

> For cases referred on or after January 1, 2019, pursuant to Article 66(b)(1)(D), 10 U.S.C. § 866(b)(1)(D), an accused is now entitled to have the [C]ourts of [C]riminal [A]ppeals review his case with respect to matters of law if the accused applies for review

---

[17] Applicant argues the provisions in Article 69(c)(2), UCMJ, "are not applicable to [his] application." The Government argues Congress could amend Article 69(c)(2), UCMJ, to "reference Article 65(d)(3)[, UCMJ]." We find that we need not reach either contention to decide the question of jurisdiction.

> from a decision of TJAG under Article 69(d)(1)(B) "and the application has been granted by the Court."[18] Thus, it is no longer the case that only those cases that TJAG elects to refer to the [C]ourt of [C]riminal [A]ppeals under Article 69(d), UCMJ, may be heard by the lower court.

*Brown*, 81 M.J. at 4, n.5 (dictum) (noting "[t]he instant case was referred on January 12, 2018"). Applicant urges that we must follow the CAAF's guidance in *Brown*.

The Government agrees with Applicant that "the plain language of Article 69[, UCMJ,] seemingly contains a scrivener's error in its internal reference to Article 65(b)[, UCMJ]." Referring to the power of a court to sidestep "the literal text of a statute when doing so would produce an absurd result," the Government notes that courts have applied the "absurdity doctrine," but only "in very limited circumstances." *See United States v. McPherson*, 81 M.J. 372, 380 (C.A.A.F. 2021).

While conceding that "consideration of the absurdity doctrine is warranted," the Government contends that application of that doctrine is "ultimately unavailing because amending the scrivener's error creates an absurd result." The Government argues that the references to Article "65(b)" where they appear in Article 69(c), though erroneous, "would require congressional revision" to correct. As a result, the Government contends that "the plain language of Article 69, UCMJ, leaves Applicant without an avenue for relief" from "either [TJAG] or this Court."

## C. Jurisdiction

Jurisdiction is a legal question reviewed de novo. *United States v. Brubaker-Escobar*, 81 M.J. 471, 474 (C.A.A.F. 2021). At the same time, because our jurisdiction is defined by statute, an issue of statutory construction is a question of law reviewed de novo. *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (citing *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016)). Usually the plain language of the relevant statute will control unless the meaning is ambiguous. *See United States v. Ortiz*, 76 M.J. 189, 192 (C.A.A.F. 2017) ("From the earliest times, we have held to the 'plain meaning' method of statutory interpretation. Under that method, if a statute is unambiguous, the plain meaning of the words will control, so long as that meaning does not lead to an absurd result."), *aff'd*, 138 S. Ct. 2165 (2018).

"Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and

---

[18] The opinion quotes Article 66(b)(1)(D), UCMJ.

the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The CAAF cautions that it "has no license . . . to construe statutes in a way that 'undercut[s] the clearly expressed intent of Congress.'" *Id.* at 396 (C.A.A.F. 2014) (alteration in original) (quoting *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008)).

The CAAF allows that "a court can refuse to apply the literal text of a statute," but only "in very limited circumstances." *McPherson*, 81 M.J. at 380. Ordinarily "when a legislature makes a substantive error concerning the actual effect of a new law, 'the remedy lies with the lawmaking authority, and not with the courts'" *Id.* at 378 (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). In such a case, "'a departure from the letter of the law' may be justified to avoid an absurd result if 'the absurdity . . . is so gross as to shock the general moral or common sense.'" *Id.* at 380 (quoting *Crooks*, 282 U.S. at 60).

## D. Analysis

Because Applicant's sentence precludes a right of direct appeal to this court, the question whether the court can exercise jurisdiction to grant the application and review the action taken by TJAG turns on whether Congress intended to vest jurisdiction in TJAG and this court to permit review of his case. We hold that Congress did, and without reliance on the absurdity doctrine. It follows that TJAG had the authority to review Applicant's petitions and we have jurisdiction to grant the application. Given these conclusions, it is unnecessary for us to decide the third issue we specified for briefing. Before proceeding with the analysis that underlies our holding, two points require mention.

First, while the JSC reference to Article 65(d), UCMJ, in Appendix 2 at A2-29 of the *Manual*, seems logically correct, even so Section 5333 of the FY17 NDAA, which refers to Article "65(b)," would have precedence over the altered recitation of Pub. L. No. 114-328, § 5333, 130 Stat. 2000, 2935 (2016), in the *Manual*. A federal statute may be surpassed only by the Constitution in the hierarchy of sources of military law; and, in that regard, the UCMJ is of higher precedence than the *Manual. See*, *e.g.*, *United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997) (observing that "a lower source on the hierarchy may grant additional or greater rights than a higher source, [but] those additional rights may not conflict with a higher source").

Second, whether TJAG and this court have jurisdiction, on the one hand, and the scope of our respective authority when exercising that jurisdiction, on the other, are related questions. However, they are sufficiently different that we need not decide them together. *See Fauntleroy v. Lum*, 210 U.S. 230, 234–35 (1908) (observing "it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction

between the two is plain"). Today, we decide the former and leave questions about the scope of our authority in conducting our review of TJAG's action for another day.

### 1. TJAG Review under Article 69, UCMJ

We agree with Applicant that TJAG's review authority is derived most directly from the text of Article 69(a), UCMJ. That subsection and the title of the article that precede it state,

> §869. Art. 69. Review by Judge Advocate General
>
> (a) IN GENERAL.—Upon application by the accused and subject to subsections (b), (c), and (d), the Judge Advocate General may modify or set aside, in whole or in part, the findings and sentence in a court-martial that is not reviewed under section 866 of this title (article 66).

Our conclusion serves the purpose of Article 69, UCMJ, which is to provide authority and direction to TJAG in the conduct of review of a court-martial conviction and sentence. In that regard, the words of the title, held to their ordinary meaning, manifest the clearest intent that Congress vested jurisdiction in TJAG to review a case. *See*, *e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)).

In subsection (a), *supra*, moreover, Congress used the phrase "subject to" to refer to provisions in three other subsections. That phrase qualifies TJAG review of a case by reference to, *inter alia*, subsections (b) and (c). The former relates to timing of an application submitted to TJAG and the latter plainly relates to the "[s]cope" of TJAG review, as may be distinct from jurisdiction. Lastly, the legislative history reflects intent in both the House and Senate to define TJAG's "scope" of review under Article 69(c), UCMJ. Importantly, the bills passed in both chambers vest jurisdiction in TJAG to review the findings and sentence in a case, like Applicant's, in which the judgment of the court martial includes confinement of six months or less and no punitive discharge. For these reasons, we conclude that TJAG had jurisdiction to review Applicant's petitions.

### 2. CCA Review under Article 66, UCMJ

On the question whether this court has jurisdiction under Article 66, UCMJ, to review the action taken by TJAG, we find that we do. Article 66(b)(1)(D) expressly confers such authority upon timely appeal and submission of an application for review:

> §866. Art. 66. Courts of Criminal Appeals

. . . .

(b) REVIEW.—

(1) APPEALS BY ACCUSED.—A Court of Criminal Appeals shall have jurisdiction of a timely appeal from the judgment of a court-martial, entered into the record under section 860c of this title (article 60c),[19] as follows:

. . . .

(D) In a case in which the accused filed an application for review with the Court under section 869(d)(1)(B) of this title (article 69(d)(1)(B)) and the application has been granted by the Court.

Our jurisdiction in that regard is succinctly stated in Article 69(d)(1)(B), UCMJ, referenced above, which allows that "[a] Court of Criminal Appeals may review the action taken by the Judge Advocate General under subsection (c) . . . in a case submitted to the Court of Criminal Appeals by the accused in an application for review." As discussed above, both the House and Senate defined TJAG's "scope" of review under Article 69(c), UCMJ, as distinct from TJAG's jurisdiction, and this court's. It follows that we may review TJAG's action.

### III. CONCLUSION

The court has jurisdiction to grant the application. Having met the criteria listed in Article 69(d)(2), UCMJ, 10 U.S.C. § 869(d)(2), the application is **GRANTED**. A scheduling order will be issued by the court under separate order, and a decision issued in due course.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[19] Article 60c, UCMJ, 10 U.S.C. § 860c, requires an entry of judgment to record the Statement of Trial Results as may be modified or supplemented by the convening authority or military judge.